## In re Anonymous No. 85 D.B. 97

Disciplinary Board docket no. 85 D.B. 97.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

STEWART, *Member,* January 18, 1998—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

Office of Disciplinary Counsel filed a petition for discipline against respondent, [ ], on July 15, 1997. The petition alleged that respondent violated Rules of Professional Conduct 1.7(b), 3.1, 3.3(a)(1), 5.1(c)(1), 5.1(c)(2), 8.4(a), 8.4(c), and 8.4(d) by his conduct in a bankruptcy matter. Respondent did not file an answer to the petition.

A disciplinary hearing was held on November 18, 1997 before Hearing Committee [ ] comprised of Chair [ ], Esquire, and Members [ ], Esquire and [ ], Esquire. Respondent was represented by [ ], Esquire. Petitioner was represented by [ ], Esquire.

The committee filed a report on July 27, 1998 and found that respondent violated all of the Rules of Professional Conduct alleged in the petition for discipline, as well as Rule 3.3(b), and recommended that respondent receive a public censure.

Respondent filed a brief on exceptions on August 18, 1998 and contended that the committee erred in finding violations of Rules 3.3(a)(1), 3.3(b), and 8.4(c). Respon-

dent requested the board impose private discipline consisting of either an informal admonition or a private reprimand.

Petitioner filed a brief opposing exceptions on September 15, 1998 and contended that the committee correctly determined the rule violations and recommended an appropriate sanction.

This matter was adjudicated by the Disciplinary Board at the meeting of October 5, 1998.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is located at Suite 3710, One Oxford Centre, Pittsburgh, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent was born in 1943 and was admitted to practice law in Pennsylvania in November 1971. His office is located at [ ]. Respondent is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court.

(3) At all times relevant hereto respondent represented [A], a debtor in a Chapter 11 bankruptcy action filed on January 20, 1993, in the United States Bankruptcy Court for the [ ] District of Pennsylvania at no. [ ].

(4) The [A] proceeding was assigned to United States Bankruptcy Judge [B].

(5) During the period that respondent represented [A], the president and principal stockholder was [C].

(6) At all times relevant hereto, the Official Committee of Unsecured Creditors was represented by [D], Esquire, of the law firm [E].

(7) Between March and May 1993, respondent, [C], Attorney [D] and the Committee engaged in discussion regarding a plan of reorganization and/or sale of the company to parties who were not members of the Committee.

(a) During that time, respondent or [C] contacted [F], the principal of [G], a Committee member, and suggested that it purchase [A].

(b) [F] notified Attorney [D], who advised respondent that all such plans would have to be communicated through the Committee.

(8) During the afternoon of May 20, 1993:

(a) [H] of [I], a company interested in purchasing [A's] contract assembly and custom transformer operations, telephoned Attorney [D] to inform him that [H] and other representatives of [I] were in [ ] conducting a due diligence inquiry on [A] and requested a meeting with Attorney [D].

(b) Attorney [D] met with [I] representatives.

(9) During the evening of May 20, 1993, respondent and [C], on behalf of [A], met with Attorney [D] and members of the Committee, at which time:

(a) Attorney [D] and the Committee members advised [C] and respondent that the Committee was willing to

consider a plan of reorganization which provided for the conversion of debt to equity; some of the debtor's largest suppliers who were on the Committee were willing to extend credit to debtor in connection with an acceptable plan; if the debtor's plan only provided for payments over time, or for the conversion of debt to equity without any substantial payment up-front, the Committee's support would be conditioned upon replacing current top-level management, including [C].

(b) Respondent met privately with [C] to determine his position, after which he responded to the Committee and Attorney [D] that [C] would be willing to leave the management of [A] if he were provided an employment contract, equity in the reorganized company, and a release and/or indemnification of his personal guarantees of [A's] debts.

(c) Respondent expressed his view that Attorney [D] was representing the Committee members as individuals.

(d) Attorney [D] advised respondent that he was representing them only as members of the Committee, and that the offer was made with the knowledge and assent of the Committee members.

(e) Respondent did not believe Attorney [D].

(10) On May 21, 1993, respondent learned that Attorney [D] had met with representatives of [I] the previous day.

(11) On May 21, 1993, respondent telephoned Attorney [D], at which time respondent requested that [D] not meet with representatives of [I] unless negotiations between [I] and [A] reached an impasse. Attorney [D] agreed to the request.

(12) By letter dated June 4, 1993, Attorney [D] advised respondent inter alia:

"The position of the Committee with respect to [C] is clear. It will not accept any plan of reorganization which provides for payments over time or which provides for the conversion of debt to equity if the plan also provides that [C] will continue in a management role. [C] is believed to be part of the problem and not part of the cure."

(13) By letter to Attorney [D] dated June 8, 1993, respondent asserted that:

(a) Attorney [D] represented members of the Committee both in their capacity as representatives of the creditors and individually as potential purchasers of the business.

(b) This alleged dual representation involved Attorney [D] in an impermissible and unwaivable conflict of interest.

(c) Attorney [D] should withdraw as counsel for the Committee.

(d) If he did not do so, debtor would seek the U.S. trustee's assistance or file an action in bankruptcy court.

(14) By letter to Attorney [D] dated June 14, 1993, respondent reiterated the demand made in the June 8, 1993 letter that the [E] firm withdraw as counsel to the Committee.

(15) Judge [B] later found that respondent's accusations in the June 8 letter were without foundation, and he took the position asserted in the June 8 and June 14 letters merely for purposes of delay and to obtain advantage for [C], in that [D] represented the creditors' positions in opposition to [C], and in that a change of coun-

sel for the Committee would delay the proceedings and give [C] leverage in pressing his demands.

(16) Attorney [D] sent a letter to respondent dated June 16, 1993 and denied that the Committee or any member had any intention to pursue a plan that would benefit any individual as opposed to all of the creditors. Attorney [D] denied that there was any conflict of interest.

(17) On June 28, 1993, [J], Esquire, an associate in respondent's law firm, acting with respondent's knowledge and at his direction, filed an adversary complaint and a motion for preliminary injunction against attorney [D] and the [E] firm.

(18) The complaint contained six counts and asserted causes of action for: breach of fiduciary duty; breach of contract; promissory estoppel; libel and slander; libel per se and slander per se; and intentional and negligent interference with contractual and prospective relations.

(19) The complaint alleged, among other things, that Attorney [D] and the [E] firm represented individual members of the Committee in their individual efforts to acquire control of ownership of the debtor, in direct conflict with the best interests of the class of unsecured creditors of the debtor.

(20) The motion for preliminary injunction alleged among other things, that Attorney [D] and the [E] firm owed a significant fiduciary duty to the unsecured creditors' Committee, which was breached by the individual representation of the individual Committee members.

(21) By order of July 1, 1993, Judge [B] scheduled an emergency hearing on the motion for July 8, 1993, and respondent was so notified.

(22) Respondent reviewed this order on July 6, 1993 and advised the judge's clerk that a continuance was necessary because [C] was out of the country on July 8.

(23) On July 6 and July 7, 1993, respondent spoke to [C] and knew that he was in the country and available for the hearing. At no time did respondent advise the court of [C's] availability.

(24) The court rescheduled the hearing on the motion for August 3, 1993.

(25) By letter of July 16, 1993, [K] of the [E] firm informed respondent that Attorney [D] and the firm continued to represent the Committee, and not any individual member of the Committee.

(26) On July 20, 1993, the [E] firm, on behalf of the Committee, filed a motion for sanctions against respondent's firm pursuant to Bankruptcy Rule 9011 and Rule 11 of the Federal Rules of Civil Procedure, and a motion for summary judgment in the adversary proceeding.

(27) On August 3, 1993, a hearing was held on respondent's motion for preliminary injunction.

(28) After the testimony of three witnesses, it became apparent to respondent that the court was not favorably disposed to the motion. Respondent then withdrew the entire adversary proceeding, including the complaint and the motion.

(29) On August 25, 1993, respondent's firm submitted its fee application in the matter.

(30) A hearing was held on October 20, 1993 on the fee application and the motion for sanctions filed by the [E] firm.

(31) By opinion and order dated November 2, 1993, Judge [B] disallowed respondent's firm's fee petition, finding, inter alia:

(a) Debtor's counsel failed to make any reasonable inquiry into the underlying facts before filing the complaint.

(b) The purpose of the complaint was to separate the Committee from its chosen counsel due to the fact that counsel for the Committee was advocating the Committee's position to remove [C] from management.

(c) [Respondent] filed a lawsuit against the attorneys for the Committee seeking $4.25 million for the sole purpose of protecting his real client [C] from the legitimate actions of the Committee.

(d) [Respondent] never had any intent to proceed with a trial on the merits of the complaint. His scheme was to use the lawsuit as a wedge to intimidate the Committee and its counsel in his negotiations with it for the benefit of [C].

(e) Respondent's inappropriate conduct affected the entire case.

(f) Both the debtor and its counsel exhibited conduct of dishonesty, incompetency and gross mismanagement of the affairs of the debtor.

(32) By memorandum opinion and order dated August 8, 1994, the United States District Court for the [ ] District of Pennsylvania affirmed the November 2, 1993 order of the bankruptcy court.

(33) By decision dated June 22, 1995, the United States Court of Appeals for the Third Circuit affirmed the district court's memorandum and opinion.

(34) Respondent testified at the hearing as to the direct and indirect financial costs suffered by him and his firm as a result of his actions in the [A] case. (N.T. 62, 63.) These costs included not only the disgorgement of fees already paid to the law firm and denial of fees and expenses, but the costs of hiring representation for the firm.

(35) Respondent's firm had basically stopped representing debtors and respondent himself has not been involved in debtor bankruptcy. (N.T. 63, 64.)

(36) Respondent is involved in discovery and motion practice, as well as settlements, but he does not try cases. (N.T. 64.)

(37) Respondent testified that the case of *[Respondent's firm] P.C. v. [A]*, [ ], is well-known among the bankruptcy bar and is referred to frequently by competitors of respondent's firm. (N.T. 65.)

(38) A malpractice suit was filed against respondent's firm and respondent personally by the bankruptcy trustee of [A]. This suit is pending. (N.T. 65-66.)

(39) Respondent testified that he has learned from his experience. He makes certain that information he tells a judge is absolutely correct, and if it is not, he makes sure the judge knows. (N.T. 66.)

(40) Respondent has changed his practice so that if he ever is involved in a Chapter 11 action, he will make certain that the principal and the corporation have separate representation, even though bankruptcy rules do not require this. (N.T. 68-69.)

(41) Respondent gave up all of his management responsibilities except on a consulting basis. (N.T. 74.)

(42) Respondent expressed remorse for filing the complaint against Attorney [D] and the [E] firm, and personally apologized to Attorney [D]. (N.T. 71, 80.)

(43) Respondent has no record of prior discipline.

## III. CONCLUSIONS OF LAW

Respondent violated the following Rules of Professional Conduct:

(1) R.P.C. 1.7(b)—Representing a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests;

(2) R.P.C. 3.1—A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law;

(3) R.P.C. 3.3(a)(1)—Knowingly making a false statement of material fact or law to a tribunal;

(4) R.P.C. 3.3(b)—The duties in paragraph (a) of Rule 3.3 continue to the conclusion of the proceedings, and apply even if compliance requires disclosure of information otherwise protected by Rule 1.6;

(5) R.P.C. 5.1(c)(1)—A lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved;

(6) R.P.C. 5.1(c)(2)—A lawyer shall be responsible for another lawyer's violation of the rules if the lawyer is a partner in the law firm in which the other lawyer

practices, or has direct supervisory authority over the other lawyer, and knows in either case of the conduct at a time when the consequences can be avoided or mitigated but fails to take reasonable remedial action;

(7) R.P.C. 8.4(a)—Violating or attempting to violate the Rules of Professional Conduct;

(8) R.P.C. 8.4(c)—Engaging in conduct involving dishonesty, fraud, deceit or misrepresentation;

(9) R.P.C. 8.4(d)—Engaging in conduct that is prejudicial to the administration of justice.

## IV. DISCUSSION

This matter was initiated by a petition for discipline filed against respondent on July 15, 1997. The petition alleged misconduct by respondent in connection with his representation of [A], a debtor in a Chapter 11 bankruptcy action filed in the United States Bankruptcy Court for the [ ] District of Pennsylvania. The petition alleged that respondent engaged in a conflict of interest by advocating on behalf of the principal of the debtor, rather than the corporate debtor, that respondent filed or authorized frivolous and false pleadings in furtherance of the interests of the principal, that respondent delayed an adversary matter in order to gain advantage for the principal, and that respondent failed to correct a material misrepresentation to the bankruptcy court.

The Disciplinary Board conducts a de novo review of all disciplinary matters that come before it upon recommendation by a Hearing Committee. *Office of Disciplinary Counsel v. Duffield,* 537 Pa. 485, 644 A.2d 1186 (1994). The board must first determine whether petitioner

has proven by clear and satisfactory evidence that petitioner violated the Rules of Professional Conduct. If a violation is found, the board next determines the appropriate disciplinary sanction, based on the nature and gravity of the misconduct, and the aggravating and mitigating factors present.

This disciplinary case was heard on November 18, 1997, at which time petitioner and respondent presented a stipulation of facts which included an admission that respondent violated at least one Rule of Professional Conduct. Respondent offered his own testimony on the issue of discipline to be imposed.

The bankruptcy court characterized the respondent's conduct as follows:

"In short, [respondent] filed a lawsuit against the attorneys for the creditors' Committee seeking $4.25 million in damages for the sole purpose of protecting his real client, [C], from the legitimate actions of the creditors' Committee in opposing [C's] management of the debtor's business. It may be that the defendants, the [E] firm and [D], recognized the allegations as being without a factual foundation and therefore the lawsuit was not a cause of concern other than the extensive amount of investigation and trial work necessary in order to make sure that all the facts were before the court. However, we might conjecture that some lawyers, upon being named a defendant in a $4.25 million lawsuit brought by an impressive [ ] law firm, might not have had the intestinal fortitude to fight it out—they might have yielded and compromised with the illegitimate purposes sought to be obtained by [respondent]. Viewed in this light, the

actions of [respondent] as an officer of the court in violating his fiduciary duties and in bringing such an action are absolutely not to be condoned. We view it as a disgrace to the legal community which we otherwise hold in high regard.

"We further conclude that [respondent] never had any intent to proceed with a trial on the merits of this complaint. He knew when he filed the complaint that the allegations were unsupported. His scheme was to file the complaint, demand the $4.25 million from the creditors' Committee counsel, and then delay a hearing on the merits while he used the lawsuit as a wedge to intimidate the creditors' Committee and its counsel in his negotiations with it for the benefit of [C]. This explains [respondent's] untruthful statements to this court's clerk on July 6 that [C] was out of the country and would not be available for the evidentiary hearing scheduled for July 8. When [respondent's] complaint was filed, it was accompanied by a motion for preliminary injunction bringing it to the attention of the court. The court immediately saw it as a deadlock to any further negotiations on a plan of reorganization. The court also considered that if there were any factual support for the serious allegations of the complaint, the creditors' Committee counsel should be removed and that if there were any such factual support, a prima facie case could be quickly made out by the plaintiff. Thus, we attempted to schedule a quick evidentiary hearing. [Respondent's] purpose was to the contrary. His effort was to stall the evidentiary hearing, to keep the complaint alive and use it as leverage for his own improper purposes in representing [C]

individually. That illicit purpose plus the total lack of any evidentiary basis for the serious accusations made in the complaint cry out for judicial recognition and appropriate sanctions." *In re [A],* [ ] at 931-32.

We believe that in light of the egregious conduct of the respondent, that the appropriate sanction is public censure. Respondent's conduct was much worse than his characterization of it "as overzealously crossing the line in representing the interest of a client." (Respondent's brief at p. 5.) It amounted to a clear abuse of the legal system. The board cautions counsel that the board's recommendation in this matter should not be used as an opportunity to generate a disciplinary complaint every time a zealous advocate's complaint is dismissed. The board does, however, want to make it clear that practitioners should carefully study Rule 3.1 before pressing claims with no basis in fact particularly where those claims are made against opposing counsel.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that the respondent, [ ], be subjected to a public censure by the Supreme Court of Pennsylvania.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Vice-Chair Caroselli did not participate in the consideration and disposition of this matter.

Board Member Schultz did not participate in the October 5, 1998 adjudication.

314

## ORDER

And now, March 15, 1999, upon consideration of the report and recommendations of the Disciplinary Board dated January 18, 1999, it is hereby ordered that [respondent] be subjected to public censure by the Supreme Court.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.